UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| RICHARD GILL | * | CIVIL ACTION NO.  12-2771 |
| VERSUS | * | JUDGE TOM STAGG |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background & Procedural History

Richard Gill protectively filed the instant application for Title II Disability Insurance Benefits on September 20, 2010.  (Tr. 125-126).  He alleged disability as of January 4, 2010 (but later amended his alleged onset date to February 4, 2010), because of spinal stenosis of the lumbar spine, lumbar disc degeneration, and a torn labrum of the left hip.  (Tr. 131, 38-39, 134). The state agency denied the claim at the initial stage of the administrative process.  (Tr. 66, 78-81).  Thereafter, Gill requested and received a May 6, 2011, hearing before Administrative Law Judge ("ALJ") Gordan Momcilovic.  (Tr. 34-65).  However, in a May 24, 2011, written decision, the ALJ determined that Gill was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that he was able to return to past relevant work as a material

handling supervisor.  (Tr. 7-25).  Gill appealed the adverse decision to the Appeals Council.  On August 24, 2012, however, the Appeals Council denied Gill's request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On October 25, 2012, Gill filed the instant complaint for review before this court.  He contends that the ALJ improperly discounted the opinion of his treating physician without providing good cause, thereby tainting the ALJ's residual functional capacity assessment.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.
See Boyd v. Apfel,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.      Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Gill did not engage in substantial gainful activity during the relevant period.  (Tr. 12).  At step two, he found that he suffered severe impairments of degenerative disc disease of the lumbar spine, status post-remote surgery; obesity; and opioid dependence.  *Id*.[1]  He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 13).

### II.   Residual Functional Capacity

The ALJ next determined that, for the relevant period, Gill retained the residual functional capacity ("RFC") to perform light work, except that he could no more than occasionally bend and stoop, with the need to avoid exposure to industrial vibration and work at

---

[1]  The ALJ determined that Plaintiff's medically determinable impairments of degenerative disc disease of the cervical spine, status post-fusion; hypertension; left hip labral tear; and depression were non-severe.  (Tr. 12-13).

4

unprotected heights.  (Tr. 14).[2]

## III.     Step Four

At step four, the ALJ employed a vocational expert to find that Gill was able to return to

his past relevant work as a materials handling supervisor, both as Gill as actually performed the

job and as the job is generally performed in the national economy.  (Tr. 24-25).[3]

<u>Analysis</u>

## I.     Residual Functional Capacity

a)     <u>Chronology of Pertinent Medical Records</u>

On May 7, 2009, Gill was seen by Cambize Shahrdar M.D., an orthopedic surgeon, for

complaints of left hip pain for the preceding six weeks.  (Tr. 196-197).  Shahrdar diagnosed a left

hip posterior labral tear.  *Id.*

On June 30, 2009, Gill returned to Dr. Shahrdar.  (Tr. 195).  An MRI of his left hip

revealed a labrum tear.  *Id.*  Gill reported that his condition had improved with activity

---

[2]  Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of arm or
> leg controls.  To be considered capable of performing a full or wide
> range of light work, you must have the ability to do substantially
> all of these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3]  Past relevant work is defined as "the actual demands of past work or 'the functional
demands . . . of the occupation as generally required by employers throughout the national
economy.'"  *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-
61)

restriction.  *Id*.  Shahrdar directed him to return as needed.  *Id*.  There is no evidence of further treatment by Dr. Shahrdar.

On February 4, 2010, Gill was seen by his family practitioner, Wendy McBride Moses, M.D., with complaints of chronic back pain that had worsened.  (Tr. 219-221).  He was unable to do much sitting, walking, or standing.  *Id*.  He could not increase his MS-Contin intake because of intolerable side effects.  *Id*.  He was having great difficulty working at that point.  *Id*.  His pain score was an 8/10.  *Id*.  Dr. Moses noted that he was not a good candidate for more back surgery. *Id.*  Upon examination, his cervical spine was tender with mild pain upon motion.  *Id*.  His lumbar spine exhibited muscle spasms and severe pain with motion.  *Id*.  However, he had no unusual anxiety or depression.  *Id*.  Moses recommended that he apply for disability.  *Id*.

On March 2, 2010, Dr. Moses wrote a To Whom it May Concern letter in which she remarked that Gill could not return to work because of a chronic disabling condition.  (Tr. 194). She asked that he be excused for another four weeks, and suggested that he might be permanently disabled.  *Id*.

Gill returned to Dr. Moses on March 22, 2010,  for treatment of chronic back pain and jerking limbs.  (Tr.  190-193).  He reported that his severe low back pain did not improve with any activity, whether lying down, sitting, or standing.  *Id*.  However, his pain score was a 0/10. *Id*.  Dr. Moses wrote that Gill remained disabled from working at that time.  *Id*.  He did not wish to pursue surgery again because he experienced claustrophobia in the MRI machine.  *Id*.  His last test was two to three years earlier.  *Id*.  His jerking limbs occurred several times during the daytime, but also during sleep.  *Id*.  Upon examination, he had no sensory loss or motor weakness.  *Id*.  His balance, gait, and coordination all remained intact.  *Id*.  His fine motor skills were normal.  *Id*.  There was no evidence of depression.  *Id*.  His lumbar spine was tender, with

severe pain upon movement. *Id.* Moses referred Gill to pain management, and open air MRI, if necessary. *Id.*

In connection with Gill's March 22, 2010, visit, Dr. Moses wrote another To Whom it May Concern letter stating that Gill was under her care, and unable to return to work at that time. (Tr. 189). He had not improved during his absence from work. *Id.* She wrote that he might be able to return to work on April 12, 2010, pending evaluation by a pain management specialist. *Id.* His activity was restricted to "none." *Id.*

On April 13, 2010, Gill was seen for initial consultation by Matthew Mosura, M.D., a pain management specialist. (Tr. 181-184). Gill's chief complaint was low back and leg pain that began 12 years earlier, but had worsened. *Id.* The pain radiated to his back, right ankle, right calf, right thigh, and right buttock. *Id.* He described the pain as an ache, numbness, sharp, shooting, and stabbing. *Id.* Lifting and sitting aggravated his symptoms. *Id.* He underwent a cervical fusion at C3-4, C5-6 in November 2006. *Id.* His neck had done well since then. *Id.* He reported that he had been taking MS-Contin since 1998, and had increased the dosage to 60 mg, three times per day, about three years earlier. *Id.* Dr. Mosura noted that MS-Contin did not appear to be helping as much and seemed to be affecting his mental status. *Id.* Gill had not worked since February because of dozing off during meetings, which he attributed to his pain medication. *Id.* His pain averaged a 6/10. *Id.* He took Zoloft, Ultram, MS-Contin, and Ambien. *Id.* Mosura noted that Gill was positive for decreased activity, fatigue, generalized weakness, irritability, and night sweats. *Id.* Nonetheless, he exhibited a full range of motion in his lower extremities, with no edema, cyanosis, or clubbing. *Id.* He had no gross sensory deficit, no motor weakness, and intact balance and gait. *Id.* He was oriented to time, place, person, and situation. *Id.* Straight leg raise was positive, bilaterally. *Id.* He had 5/5 strength in the upper extremities.

*Id.*  Mosura diagnosed post-laminal syndrome-lumbar and lumbosacral spondylosis.  *Id.*  He noted that Gill did not feel that his medication was effective.  *Id.*  Mosura suspected that Gill was tolerant to morphine, and that his medication needed to be rotated.  *Id.*  Mosura suggested a drug holiday, but Gill felt his pain was too severe for that.  *Id.*  Mosura recommended a trial of other medication and spinal cord stimulation.  *Id.*  Mosura's goal was to wean Gill's narcotics significantly, which would reduce his cognitive side effects and allow him to return to work.  *Id.*

On May 24, 2010, a physician completed a Fitness for Duty examination for Gill's employer, and found, without explication, that Gill was unfit to return to work.  (Tr. 205).

Gill returned to Dr. Moses on May 27, 2010, to address his chronic pain, allergies, and insomnia.  (Tr. 185-188).  Gill told Moses that he had seen Dr. Mosura and tried the medications that he had recommended, but they did not work.  *Id.*  He did not want a spinal stimulator implant.  *Id.*  Instead, Gill returned to his usual MS- Contin regimen, and decided to apply for permanent disability.  *Id.*  Moses documented that Gill was unable to perform his job duties due to chronic disabling lumbar pain.  *Id.*  His lumbar spine exhibited tenderness and severe pain with motion.  *Id.*  Nonetheless, Gill's pain score was a 0/10, and his extremities appeared normal. *Id*.

On July 12, 2010, Dr. Moses completed an employer-supplied form indicating that Gill could not perform any work, including light, sedentary work.  (Tr. 198).  She opined that he never would be able to return to work.  *Id.*

On August 27, 2010, Gill returned to Dr. Moses to treat his chronic pain, elevated blood pressure, constipation, and to refill his medication.  (Tr. 207-210).  Gill's pain level was stable. *Id.*  His pain score was a 0/10.  *Id.*  His ambien was effective, but he felt hungover the next day. *Id.*  He had not been exercising after he tore his left hip labrum.  *Id.*  He did not need assistance

with activities of daily living.  *Id.*  Upon examination, he was positive for moderate pain with motion.  *Id.*

Gill next returned to Dr. Moses on November 29, 2010, for follow up for his chronic back pain and hyperlipidemia.  (Tr. 258-260).  Gill reported that his pain was 0/10.  *Id.*  Upon examination, his lumbar spine was tender, with moderately reduced range of motion.  *Id.*  He did not exhibit unusual anxiety or evidence of depression.  *Id.*

On December 13, 2010, at the request of the state agency, Gill underwent a consultative physical examination administered by Sarah Hamauei, M.D.  (Tr. 225-229).  Gill complained of spinal stenosis in the lumbar spine, lumbar disc degeneration, a torn laburm of the left hip, and depression.  *Id.*  He reported a neck fusion in 2005 that worked well, and that he no longer had neck pain.  *Id.*  On questioning, he denied depression and admitted to only occasional moodiness.  *Id.*  He denied difficulty with concentration or sleep.  *Id.*  Upon examination, he ambulated without assistance.  *Id.*  There was no muscle asymmetry, atrophy, or involuntary movements.  *Id.*  His gait was normal, and he was able to rise from a seated position without assistance, stand on tiptoes, and heel and tandem walk without problems.  *Id.*  He also could bend without difficulty, but could not squat.  *Id.*  Flexion of his lumbar spine was limited to 60 degrees and extension to 0.  *Id.*  His grip strength was 5/5, with adequate fine motor movement, dexterity, and ability to grasp bilaterally.  *Id.*  His recent and remote memory were intact, with good insight and cognitive function.  *Id.*  His sensation was intact throughout.  *Id.*  An x-ray of the lumbar spine showed screws in the vertebrae at L5 and degenerative changes at L5-S1.  *Id.*

Dr. Hamauei diagnosed L3-L4 spinal stenosis, left hip labral tear, and hardware at C5-C6.  *Id.*  She opined that based on the examination and objective evidence, Gill should be able to sit, walk, and/or stand for at least a partial workday with light duty.  *Id.*  However, he could not

9

lift/carry objects without limitation.  *Id.*  He was able to hold a conversation, respond appropriately to questions, and carry out and remember instructions.  *Id.*

On January 5, 2011, non-examining agency physician, Edward Dean, M.D., reviewed the record and endorsed an RFC for light work, with the ability to only occasional perform postural activities.  (Tr. 232).

On February 2, 2011, Dr. Moses completed a Physical Capacities Evaluation form.  (Tr. 254-257).  She indicated that Gill could sit for a total of four hours during a work day, but stand/walk for less than one.  *Id.*  He occasionally could lift/carry up to five pounds, but nothing more frequently or heavier than that.  *Id.*  He could never climb, balance, stoop, kneel, crouch, or crawl.  *Id.*  He occasionally could reach overhead.  *Id.*  He was moderately limited around unprotected heights and being around moving machinery, and mildly limited in exposure to marked changes in temperature, driving cars and exposure to dust, fumes, and gases.  *Id.*  She noted that he suffered from fatigue caused by chronic pain on maintenance narcotics.  *Id.*  He also suffered from pain that prevented him from working even at a sedentary position.  *Id.*  The mental effects of his pain precluded attention and concentration required for even simple, unskilled, work tasks.  *Id.*

On May 11, 2011, Dr. Moses wrote another To Whom it May Concern Letter.  (Tr. 261). She explained that Gill had been a patient of hers for many years, and had taken many different medications.  *Id.*  She stated that his pain ranged from a 3 to a 10, and averaged a 7.  *Id.*  The pain was constant and nearly unbearable at times, and prevented Gill from working.  *Id.*

b)      Discussion

In his decision, the ALJ reviewed the available evidence, including the hearing testimony, Gill's activities of daily living, the medical treatment history, and the findings of the treating,

10

consultative, and agency physicians.  (Tr. 14-24).  The ALJ noted that Gill had undergone prior lumbar and cervical fusions, and had returned to work following the surgeries, including the last one in 2006.  *Id*.  The ALJ further observed that Gill's treating family practitioner, Dr. Moses, essentially endorsed disability based on Gill's subjective complaints that his pain had worsened. *Id*.  The ALJ determined, however, that Gill was only partially credible, and consequently discounted Dr. Moses' opinion to the extent that she precluded Gill from performing even light duty work.  *Id*.  In lieu of the opinion of the treating family practitioner, the ALJ afforded "significant weight" to the findings of the consultative physician and the stage agency medical consultant.  *Id*.

Plaintiff contends that the ALJ impermissibly rejected the opinion of her treating physician without good cause.  Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . ."  20 C.F.R. § 404.1527(c)(2).  However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted).  An ALJ cannot reject a medical opinion without an explanation supported by good cause.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).  Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[c]."  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In this case, the ALJ dutifully considered each of the § 1527(c) factors before determining

11

not to accord controlling weight to Dr. Moses' opinion.  *See* Tr. 21-23.  The court adds that Gill

saw Dr. Moses only five times during the relevant period.  Moreover, despite professing to

having been his physician for many years, the first treatment note from Dr. Moses in the instant

administrative record is dated February 4, 2010, at which point Dr. Moses advised Gill to apply

for disability.  The lack of any preceding records from Dr. Moses causes Gill's "decline" to

appear sudden, abrupt, and without any context.[4]  Moreover, Moses' opinion that Gill's condition

had deteriorated is not confirmed by any changes in diagnostic testing; rather, it is premised upon

Gill's subjective complaints.  Thus, the ALJ's assessment of the claimant's credibility is

interwoven with his decision to discount Dr. Moses opinion.  Here, of course, the ALJ

determined that "the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they

are inconsistent with the . . . residual functional capacity assessment."  (Tr. 16).

   When assessing credibility, the ALJ is required to consider the objective medical

evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence.

Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability

Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P (S.S.A July

2, 1996).  The ALJ also must consider inconsistencies in the evidence and conflicts between the

claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  However,

the ALJ need not follow formalistic rules in his credibility assessment.  *Falco v. Shalala*,  27

F.3d 160, 164 (5th Cir. 1994).

---

   [4]  While the ALJ has the duty to develop the record, the claimant still retains the burden
of proof for the first four steps of the sequential evaluation process.  *Muse v. Sullivan*, 925 F.2d
785, 789 (5th Cir. 1991).

Relatedly, the court recognizes that pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R.§§404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (1993).

In discounting Gill's complaints of debilitating pain, the ALJ noted *inter alia* that Gill did not demonstrate observable signs such as drawn features, muscle atrophy, sensory loss, or significant weight loss. Moreover, other than positive straight leg tests, the physical examination by pain management specialist, Dr. Mosura, was relatively benign. Indeed, Mosura was not inclined to accept Gill's complaints of disabling and non-responsive pain. Rather, he believed that Gill was tolerant to morphine, and that his medication needed to be rotated. Therefore, he endeavored to reduce Gill's narcotic use so he could return to work. Gill expressed reluctance to

13

this approach, and did not return to Dr. Mosura.

Similarly, other than reduced range of motion in the lumbar spine, consultative physician, Dr. Hamauei, did not observe significant objective signs of debilitating pain.  In fact, she opined that Gill could work sit, stand, and walk for *at least* a partial workday.  To the extent that Dr. Hamauei's opinion remained ambiguous regarding the length of time that Gill could work during the workday, the agency physician resolved the ambiguity by opining that Gill retained the residual functional capacity for a reduced range of light work.

The court notes that in addition to debilitating pain, Gill contends that his pain medication impaired his ability to remember and concentrate.  However, all of the examining physicians observed that Gill was alert and oriented.  Moreover, Gill's medication does not prevent him from driving a car, albeit he sometimes makes wrong turns.  Also, Gill worked for approximately three years on his current dosage of medication.  Clearly, if the dosage had materially impaired Gill's cognitive ability at work to the extent he now claims, it stands to reason that he would have been compelled to seek disability much earlier than he did.  *See Fraga v. Bowen*, 810 F.2d 1296, 1305 n.11 (5th Cir. 1987) (an impairment is not disabling if the claimant was able to work for years despite the impairment).

In sum, the court finds that the ALJ's credibility determination satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence.  *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's

14

subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

Where the record conflicted, the ALJ credited the benign examination findings of Dr. Long.  The

ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and her resolution is

supported by substantial evidence.  *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan.

19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's

credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.)

(ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective

complaints were not given enough weight is unavailing);  *Hernandez v. Astrue*, 2008 WL

2037273 (5th Cir. May 13, 2008) (unpubl.) (inconsistencies between claimant's subjective

complaints and physicians' evaluations provided substantial evidence to support the ALJ's

credibility determination).

        With regard to the specific limitations imposed by Dr. Moses, the ALJ noted that Dr.

Moses had attributed her pain management to Gill's lumbar *and* cervical joint pain, even though

her records reveal that she primarily treated Gill for lumbar pain.  Moses also opined that Gill

could never balance, which as the ALJ noted, was inconsistent with Gill's retained ability to

stand, walk, sit, and drive.  The court further emphasizes that with the exception of Gill's

February 2010 visit, Gill consistently rated his pain level to Dr. Moses as a 0/10.  This level of

pain relief belies both Gill's subjective complaints and Dr. Moses' assignment of debilitating

limitations.  The court finds that the ALJ provided good cause, supported by substantial

evidence, to reject Dr. Moses' opinion(s).  *See Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006

WL 2167675 (5th Cir. 08/02/2006) (unpubl.); *see also Nugent v. Astrue*, 2008 WL 2073891 (5th

Cir. May 16, 2008) (ALJ entitled to discount treating physician's conclusory statement because it

contradicted earlier treatment notes, objective medical findings, and other examining physicians'

opinions); *Richard ex rel. Z.N.F. v. Astrue*, 2012 WL 2299479 (5th Cir. June 15, 2012) (unpubl.) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. April 20, 2011) (unpubl.) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the objective findings of his own clinic notes nor by the evidence as a whole.").

The undersigned further finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

## II.    Step Four

Aside from his challenge to the ALJ's residual functional capacity assessment, Plaintiff does not raise any error specific to the ALJ's step four analysis.

## <u>Conclusion</u>

The Commissioner in this case was tasked with determining whether Plaintiff was disabled.  In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence.  The evidence by no means was uniform and could have supported a different outcome.  Such conflicts in the evidence, however, are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence

weighs against the Commissioner's decision." *Newton, supra.*[5]  That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

---

[5]  Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted).  One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result.  *Id.*  This exception is applicable here.

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 13th day of January 2014.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE

18